UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
MARCUS SIRMANS,                                             :
:
Plaintiff,                        :
:                    23-CV-7805 (VSB)
- against -                                   :
:                    **OPINION & ORDER**
:
E TRADE SECURITIES LLC,                                     :
:
Defendant.                        :
:
------------------------------------------------------------X

Appearances:

Marcus Sirmans
New York, NY
*Pro se Plaintiff*

Eric David Wong
Greenberg Traurig, LLP
New York, NY
*Counsel for Defendant E Trade Securities LLC*

VERNON S. BRODERICK, United States District Judge:

  Plaintiff Marcus Sirmans, proceeding pro se, brings claims against E Trade Securities LLC ("E*TRADE") for violations of Title II of the Civil Rights Act of 1964, New York State Human Rights Law, New York City Human Rights Law, gross negligence, and willful misconduct. Before me is (1) E*TRADE's motion to compel Sirmans to arbitrate his claims and for a stay of proceedings pending the outcome of arbitration, and (2) Sirmans's application for pro bono counsel to represent him in this suit. For the reasons set forth below, E*TRADE's motion to compel and for a stay of proceedings is GRANTED, and Sirmans's request for counsel is DENIED as moot.

I.   **Background**

   A.   *Factual Background*[1]

On August 31, 2022, Marcus Sirmans opened an E*TRADE account, ending in xx10 (the "Account"). (Renga Decl. ¶ 11.)[2] As part of the online account-application process, Sirmans agreed to the terms of E*TRADE's Securities Customer Agreement (the "Agreement"). (Renga Decl., Ex. A at 2.) Specifically, Sirmans affirmed: "I acknowledge that I have received, read, and agree to be bound by the terms and conditions as currently set forth in the E*TRADE Securities Customer Agreement." (*Id.*)

The reference to the "E*TRADE Securities Customer Agreement" in the application was hyperlinked to the Agreement, which allowed Sirmans to read and review the provisions of the Agreement. (*Id.*) One such provision was the "Arbitration Agreement and Disclosures" clause, which provides:

> The Account Holder agrees to resolve by binding arbitration any controversy that may arise between E*TRADE Securities or its affiliates and the Account Holder relating in any way to the Account Holder's relationship with E*TRADE, any Account held with E*TRADE, or any service provided to the Account Holder by E*TRADE. This arbitration agreement includes any controversy involving transactions of any kind made on the Account Holder's behalf by or through E*TRADE or the performance, construction, or breach of this Customer Agreement or any other written agreement between E*TRADE and the Account Holder.

(Renga Decl., Ex. B at 46.)

---

[1] The facts in this section are drawn from the Amended Complaint, (Doc. 1-2 at 120–32 ("Amended Complaint" or "Am. Compl.")), and the evidence proffered by the parties in connection with the motion to compel arbitration. *See Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (considering documents submitted by parties in deciding whether an arbitration agreement exists). "[W]here the documentary evidence contradicts factual allegations in the [Amended] [C]omplaint, [I] deem[] those allegations implausible." *Garcia v. Pritchard Indus., LLC*, No. 20-CV-10858, 2022 WL 825490, at *1 n.1 (S.D.N.Y. Mar. 18, 2022).

[2] "Renga Decl." refers to the declaration submitted by Erik Renga, dated September 8, 2024. (Doc. 7, Ex. 4.)

Moreover, the online application explicitly referenced the Agreement's arbitration clause. (Renga Decl., Ex. A at 2.) By clicking through the application, Sirmans confirmed: "I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY THE PREDISPUTE ARBITRATION CLAUSE IN SECTION 12 OF THE E*TRADE CUSTOMER AGREEMENT." (*Id.*)

### B. *Procedural History*

On June 30, 2023, Sirmans sued E*TRADE in New York Supreme Court for gross negligence and willful misconduct. (Doc. 1-2 at 4–7 ("Complaint" or "Compl.").) He alleged that "$160,000 [was missing] from his Charles Schwab account as [the funds] were fraudulently transferred from his Schwab account to his E*TRADE account." (*Id.* at 4.) After the fraudulent transfer, E*TRADE purportedly "refused to investigate the matter and return the unauthorized transfer of funds." (*Id.*) According to Sirmans, this neglect was a violation of E*TRADE's "policy guidelines," which state that E*TRADE "will restore to [the] account [holder] cash and/or shares of securities equal to the amount of cash and/or shares of securities [that the account holder held] at the time of any unauthorized activity." (*Id.* at 2.)

On July 26, 2023, E*TRADE filed a motion to stay and compel Sirmans to arbitrate his claims. (Doc. 1-2 at 10.) In response, Sirmans filed an Amended Complaint on August 4, 2023. (Am. Compl.) In addition to asserting claims for gross negligence and willful misconduct, the Amended Complaint alleges violations of Title II of the Civil Rights Act of 1964, the New York State Humans Rights Act, and the New York City Human Rights Law. (*Id.* at 4–6.)

On September 1, 2023, E*TRADE timely removed the action to this Court. (Doc. 1.) One week later, E*TRADE filed a motion to stay and compel arbitration. (Doc. 7.) Sirmans subsequently filed an unsworn affirmation in opposition to E*TRADE's motion to compel

3

arbitration, (Doc. 11), and a request for pro bono counsel, (Doc. 14). On September 27, 2023, E*TRADE filed its reply. (Doc. 17.) Without seeking leave of Court, Sirmans filed a sur-reply on October 2, 2023, (Doc. 18), which E*TRADE opposed on October 4, 2023, (Doc. 19). Over the next several months, the parties exchanged a flurry of letters, all of which were improperly filed and are not part of the record for purposes of this Opinion & Order.

## II. Legal Standard

"Under the Federal Arbitration Act ("FAA"), arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting 9 U.S.C. § 2). "A district court has no discretion regarding the arbitrability of a dispute when the parties have agreed in writing to arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995). A party, however, "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted). "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stan. Jr. Univ.*, 489 U.S. 468, 469 (1989). Accordingly, courts often conclude "that well-supported allegations of fraud in the formation of an arbitration agreement, such as where the party objecting to arbitration alleges an identity thief opened or otherwise interfered with the agreement containing the arbitration provision, preclude a finding as a matter of law that the parties have an enforceable agreement to arbitrate." *See Haynes v. TransUnion, LLC*, No. 19-CV-7157, 2021 WL 7906567, at *5 (E.D.N.Y. Sept. 30, 2021) (collecting cases), *reconsideration denied*, No. 19-CV-7157, 2022 WL 1228927 (E.D.N.Y. Apr. 25, 2022).

In deciding whether to grant a motion to compel arbitration, courts employ a standard similar to the standard for a summary judgment motion. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted).

### III. Discussion

#### A. *Arbitration*

Sirmans does not dispute that, if he opened the Account himself, his claims would be subject to arbitration; he disputes only that he opened the Account in the first place. In his affirmation in opposition to E*TRADE's motion to compel, Sirmans insists that an "unknown fraudster" stole his identity and used it to open "this fraudulent account." (Doc. 11 ¶¶ 3, 7.) Because he did not open the Account, Sirmans says, "he never signed a client agreement . . . binding him to arbitration." (*Id.* ¶ 18.) Such denials, however, must be considered together with the admissible evidence in the record. *See Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) ("[W]here the facts alleged in a nonmovant's declaration are so contradictory that doubt is cast upon their plausibility, then absent other evidence, granting the motion to compel may be appropriate." (internal quotation marks omitted)).

As a threshold matter, Sirmans's affirmation does not constitute viable evidence for purposes of a motion to compel. Under 28 U.S.C. § 1746, an unsworn affirmation constitutes admissible evidence "only when it is expressly subscribed as true under penalty of perjury." 28 U.S.C. § 1746. Because Sirmans's affirmation was not made under penalty of perjury or

subscribed to as true and correct, it is of "no evidentiary value" in deciding the motion. *Aersale Inc. v. Ibrahim*, No. 13-CV-713, 2013 WL 5366384 at *4 (S.D.N.Y. Sept. 25, 2013); *see Stair v. Calhoun*, No. 12-CV-6121, 2015 WL 1966345, at *1 (E.D.N.Y. May 1, 2015) (concluding that the requirements of Section 1746 were not met where, as here, the pro se plaintiff's declaration was unsworn and did not include language stating that its contents were "true under penalty of perjury"). Accordingly, Sirmans has failed to offer "sufficient evidentiary facts" to support his claim that "no agreement to arbitrate exists."[3] *Manning v. Energy Conversion Devices*, Inc. 833 F.2d 1096, 1103 (2d Cir. 1987).

Even if I were to consider the affirmation despite the fact that it was not made under penalty of perjury or subscribed to as true and correct, it would not support a finding that Sirmans did not open the Account himself. As an initial matter, in his pleadings Sirmans admits that he is the owner of the Account. In both his original and Amended Complaint, Sirmans alleges that he "is a client and holder of E-trade account ending in *xxxx-xx10*." (Compl. at 2; Am. Compl. at 2.) Sirmans further alleges that $160,000 was fraudulently "transferred from his Schwab account to his E*TRADE account." (Compl. at 4; Am. Compl. at 13.) Indeed, it was only after E*TRADE filed its motion to compel arbitration that Sirmans changed his story and asserted for the first time that he was the victim of identity fraud in connection with the opening of the Account. Because "a plaintiff, even when proceeding pro se, may not raise new allegations for the first time in opposition to a motion for summary judgment," *Pierre v. City of*

---

[3] In a sur-reply that is not properly before me, Sirmans attached as an exhibit a copy of an Identity Theft Report (the "Report"), dated August 22, 2023, that he filed with the Federal Trade Commission ("FTC") under the penalty of perjury. (Doc. 18, Ex. A.) In the Report, Sirmans makes many of the same denials found in his unsworn affirmation, including that his "identity [was] compromised" and that there was "an unauthorized fund transfer from [his] Charles Schwab brokerage account to a fictitious account opened in [his] name at E[*]TRADE Securities." (*Id.*) However, I note that the Complaint and Amended Complaint were both filed before the Report was filed with the FTC. For the reasons set forth in this Opinion & Order, these denials are implausible.

*New York*, 531 F. Supp. 3d 620, 628 n.5 (E.D.N.Y. 2021), the standard for which is "similar to that applicable" to a motion to compel, *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), Sirmans's affirmation is insufficient to create a genuine issue of material fact as to whether the Agreement is void, *see Stamford Holding Co. v. Clark*, No. 02-CV-1236, 2003 WL 1597206, at *9 (D. Conn. Mar. 25, 2003) (concluding that arbitration clauses in account agreements were enforceable where the plaintiff's "denial [of the existence and enforceability of the agreements] occurred only after [the defendant] sought to compel arbitration," and where the "claim that the agreements [were] void [was] completely lacking" in earlier filings in the case and the amended complaint filed in another lawsuit).

In addition, Sirmans's denials are "blatantly contradicted" by the undisputed evidence in the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007). For example, E*TRADE submitted a recording of a call it received on August 31, 2022, the day the Account was opened, from the same phone number that Sirmans identifies as his in this litigation. (Renga Decl. ¶¶ 11–13.) On the recording, the caller states that he is "calling regarding [the] new account that [he had] just opened."[4] (Renga Decl., Ex. D at 2:3–4) That same day, E*TRADE's New Account Specialist Team received an email from the address Sirmans similarly identifies as his in this litigation. (Renga Decl. ¶ 15.) The email included a picture of Sirmans's New York State Driver's License, which E*TRADE required a copy of before activating the Account. (Renga Decl., Ex. E.) E*TRADE subsequently sent Sirmans an email—to the same address—advising him that the Account was active. (Renga Decl., Ex. G.) In the months that followed, E*TRADE sent Sirmans dozens more emails, including over fifty confirmation messages, several notifications

---

[4] Sirmans's argument that the call is "out of context" because he had another E*TRADE Account, (Doc. 11 ¶ 2), is belied by the record evidence, which clearly shows that Simans called E*TRADE about the account he had "just opened" because he "want[ed] to try to transfer in the funds today." (Renga Decl., Ex. D at 2:4, 3:13–14.)

that account statements were available online, and a Form 1099. (Renga Decl. ¶¶ 21–23.) E*TRADE also received a call from Sirmans on June 21, 2023. (Renga Decl. ¶ 24.) On the recording, Sirmans identifies himself by name and admits that the Account was his. (*See* Renga Decl., Ex. N at 7:22–25 ("[B]oth the accounts are mine. The Charles Schwab account is mine. The -- this account is mine. And the money was just funneled into this account.").) These communications—coupled with Sirmans's failure to report any fraudulent activity for over two years after the account's creation—are fatal to his contention that he did not open the Account himself. *See Barrows*, 36 F.4th at 51 ("[A] party normally does not show the existence of a genuine issue of fact merely by making assertions that are based on speculation or are conclusory." (internal quotation marks and alterations omitted)). Accordingly, E*TRADE's motion to compel arbitration is GRANTED.[5]

### B. *Request for a Stay*

E*TRADE requests that I stay the case pending the outcome of arbitration. When a court is called upon to adjudicate a motion to compel arbitration, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d

---

[5] Because Sirmans does not argue that his claims fall outside the scope of the Agreement or that his federal statutory claim is not arbitrable, I conclude that Sirmans's claims are all subject to arbitration.

Cir. 2015) (holding that a stay of the proceedings is mandatory "after all claims have been referred to arbitration and a stay [has been] requested"). Because all of Sirmans's claims have been referred to arbitration and E*TRADE has requested that I issue a stay pending the outcome of arbitration, this case is hereby STAYED until further order by the Court.

### C. *Appointment of Counsel*

In civil cases, there is no constitutional right to counsel. *See Iannaccone v. Law*, 142 F.3d 553, 556 (2d Cir. 1998). Indeed, a court has no authority to appoint counsel, but instead may only "request" that an attorney volunteer to represent a pro se party. *Genao v. City of New York*, No. 20-CV-6507, 2022 WL 1115563, at *2 (S.D.N.Y. Apr. 14, 2022). Courts in this Circuit are required to request the services of pro bono counsel "sparingly . . . to preserve the 'precious commodity' of volunteer-lawyer time for those litigants whose causes are truly deserving." *Urena v. City of New York*, No. 22-CV-4758, 2023 WL 5715836, at *1 (S.D.N.Y. Sept. 5, 2023) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989)). Before making such a request, the court must consider, among other factors, whether (1) "the movant is indigent," and (2) "the movant's position seems likely to be of substance." *Id.*

Setting aside the issue of whether Sirmans is, in fact, indigent, my conclusion that E*TRADE's motion to compel arbitration should be granted and that this case should be stayed pending the outcome of arbitration renders Sirmans's request for counsel moot. Accordingly, Sirmans's motion for appointment of counsel is DENIED as moot.

### IV. Conclusion

For the foregoing reasons, E*TRADE's motion to compel arbitration is GRANTED, and I refer Sirmans's claims to arbitration. The matter is hereby STAYED pending the completion of arbitration. Sirmans's motion for the appointment for counsel is DENIED as moot.

The parties are directed to submit a joint status letter by November 12, 2024 advising me as to the status of arbitration proceedings. The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 7 & 14 and to stay this case.

SO ORDERED.

Dated: July 17, 2024
      New York, New York

                                                 Vernon S. Broderick
                                                 United States District Judge